## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ERIK COIGNARD and ELIZABETH COIGNARD, Individually and as Next Friends of KRISTIANA JOY COIGNARD (Minor), | § § § § | |
| *Plaintiffs,* | § | |
| V. | § | **CIVIL ACTION NO.** |
| | § | 2:15-cv-01229-JRG |
| THE CITY OF LONGVIEW, DON DINGLER, Individually and CHIEF OF THE LONGVIEW POLICE DEPARTMENT; OFFICER GLENN DERR, Badge 493, Individually; OFFICER GRACE BAGLEY, Badge 473, Individually; OFFICER GENE DUFFIE, Badge 272, Individually, | § § § § § § § § § | |
| *Defendants.* | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

Now comes **ERIK COIGNARD AND ELIZABETH COIGNARD, INDIVIDUALLY AND AS NEXT FRIENDS OF KRISTIANA JOY COIGNARD (Minor),** hereafter referred to as Plaintiffs, by and through their undersigned attorney of record and, in accordance with the Civil Rights Act, the Federal Rules of Civil Procedure, the Texas Tort Claims Act, and Title II of the Americans with Disabilities Act, file this Second Amended Complaint against **THE CITY OF LONGVIEW**, **DON DINGLER,** Individually and as **CHIEF OF THE LONGVIEW POLICE DEPARTMENT, OFFICER GLENN DERR**, Badge #493, Individually, **OFFICER GRACE BAGLEY**, Badge #473, Individually, **OFFICER GENE DUFFIE,** Badge #272, Individually, hereafter referred to as Defendants. In support of this cause of action,

Plaintiffs would respectfully show unto the Court the following:

## I.
## PARTIES

1.      Plaintiffs **ERIK COIGNARD AND ELIZABETH COIGNARD** are individuals residing in Bexar County, Texas and are the parents of **KRISTIANA JOY COIGNARD** (Minor), deceased (hereinafter referred to as "**KRISTIANA**"). They sue in their individual capacities, and as the biological parents and next friends of **KRISTIANA**.

2.      Defendant **THE CITY OF LONGVIEW, TEXAS** is a municipal governmental entity within the State of Texas and the public employer of **DON DINGLER, CHIEF OF THE LONGVIEW POLICE DEPARTMENT, OFFICER GLENN DERR, OFFICER GRACE BAGLEY,** and **OFFICER GENE DUFFIE**. The City of Longview has been served with process and has filed an answer herein.

3.      Defendant **DON DINGLER, Individually and as CHIEF OF THE LONGVIEW POLICE DEPARTMENT** (hereinafter referred to as "**DEFENDANT CHIEF DINGLER**"), at all times relevant, was a resident of the State of Texas, and was an employee for the Longview Police Department. He has been served with process and has filed an answer herein.

4.      Defendant **OFFICER GLENN DERR**, Badge #493, Individually (hereinafter referred to as "**DEFENDANT DERR**"), is an individual and, at the time of the incident, was a duly appointed and acting officer of the Police Department of the **CITY OF LONGVIEW**, acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the **CITY OF LONGVIEW**. He has been served with process and has filed an answer herein.

5.      Defendant **OFFICER GRACE BAGLEY**, Badge #473, Individually

(hereinafter referred to as "**DEFENDANT BAGLEY**"), is an individual and, at the time of the incident, was a duly appointed and acting officer of the Police Department of the **CITY OF LONGVIEW**, acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the City of Longview. She has been served with process and has filed an answer herein.

6.      Defendant **OFFICER GENE DUFFIE**, Badge #272, Individually (hereinafter referred to as **"DEFENDANT DUFFIE"**), is an individual and, at the time of the incident, was a duly appointed and acting officer of the Police Department of the **CITY OF LONGVIEW**, acting under the color of law, under the color of the statutes, ordinances, regulations, policies, customs, and usages of the City of Longview. He has been served with process and has filed an answer herein.

## II.
## VENUE AND JURISDICTION

7.      Plaintiffs assert their claims against Defendants for violation of **KRISTIANA**'s Fourth Amendment Rights against unreasonable search and seizure, which is incorporated upon the States through the Fourteenth Amendment. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state law claims that are set forth below.

8.      Because Defendants' actions, inactions, and failures to comply with the Civil Rights Act all occurred or failed to occur in Gregg County, Longview, Texas, venue in the Marshall Division of the Eastern District of Texas under 28 U.S.C. § 1391(b) is appropriate.

### III.
### STATEMENT OF FACTS

9.    On January 22, 2015 **KRISTIANA** entered the Longview Police Department Headquarters, picked up the lobby phone and asked for help. Eleven minutes later, she was shot four times by Longview Police Officers. She died on the floor, alone.

10.    **KRISTIANA** suffered from bipolar disorder/depression. She was also vibrant, smart, compassionate, and a person who fought for causes she believed in. Her struggles with mental illness were well documented. During her short life, **KRISTIANA** had been hospitalized and received treatment for her mental illness. **KRISTIANA** knew when she needed help and would request it.

11.    On January 22, 2015, **KRISTIANA** was in Longview staying with her grandparents. She was about to turn 18 years old and had asked her parents if she could try living outside of her home city of San Antonio, in order to experience limited independent living. **KRISTIANA** was fully functional, educated, and her plans for the future included finding a profession in which she could help people. On the night of January 22, 2015, **KRISTIANA** packed her backpack and went to the Longview Police Station. Her whereabouts prior to her entry into the Station are somewhat unknown, but earlier in the evening, she had texted her mother and told her that she loved her.

12.    **KRISTIANA** entered the Police Station at approximately 6:28 p.m. on January 22, 2015. The video taken at the Police Station tragically documents the events

leading up to her death. The video reveals the following:

A.   Approximately one minute and twenty seconds after entering the Station, **KRISTIANA** walked toward the intercom and texted messages on her phone.

B.   After standing alone in the Station for approximately four minutes **KRISTIANA** picked up the telephone and asked for help from the Longview Police Department.

C.   She was on the phone for approximately ten seconds.

D.   Six minutes after her arrival, **KRISTIANA** again used the intercom, and again requested help from the Longview Police Department.

E.   Approximately seven minutes and forty seconds after **KRISTIANA** entered the Station, **DEFENDANT DERR** entered the Station and approached **KRISTIANA. KRISTIANA** backed away from **DEFENDANT DERR**, who reached for his Taser.

F.   Eight minutes after entering the Station, **DEFENDANT DERR** pushed **KRISTIANA** into a chair.

G.   Eight minutes and forty-five seconds after arriving at the Station, **KRISTIANA** laid over a row of three chairs. **DEFENDANT DERR** bent over **KRISTIANA**, who was not moving and was completely subdued.

H.   Approximately forty-five seconds later, **KRISTIANA** attempted to sit up. **DEFENDANT DERR** again restrained her, and used a Taser on the back of her neck. Again **KRISTIANA** was completely subdued.

I.   Approximately one minute later, **KRISTIANA** stood up. **DEFENDANT DERR** went behind her and threw **KRISTIANA** to the floor. He attempted to handcuff her. **DEFENDANT DERR** stood up and pointed something at **KRISTIANA** as she lay prone and motionless on the floor. Again, **KRISTIANA** was completely subdued.

J.   Approximately thirty seconds later, **DEFENDANT DUFFIE** entered the Police Station. He approached **KRISTIANA** who stood up and had a conversation with the two Officers. **DEFENDANT DERR** pointed some type of weapon at her.

K.   Approximately fifteen seconds later, **DEFENDANT BAGLEY** entered the Police Station. **DEFENDANT DERR** pointed his service weapon at **KRISTIANA.**

L.   Approximately five seconds later, **KRISTIANA** moved toward **DEFENDANT DERR**. The Officers discharged their weapons and struck

**KRISTIANA** four times. **KRISTIANA** fell to the floor.

M.   Approximately thirty seconds after **KRISTIANA** was shot, **DEFENDANT DUFFIE** reached down, rolled **KRISTIANA** over, and handcuffed her.

N.   None of the officers checked whether **KRISTIANA** was alive or made any sort of effort to check her vital signs. Both **DEFENDANT DERR** and **DEFENDANT BAGLEY** sat down.

O.   A fourth Officer entered, and again rendered no aid to **KRISTIANA**. The fourth Officer went over and looked at **KRISTIANA** but offered no assistance.

P.   A fifth Officer entered the scene, and again rendered no assistance to **KRISTIANA** as she remained on the floor.

Q.   Approximately three minutes later, EMS personnel arrived on the scene and the hand cuffs were removed from **KRISTIANA**'s wrists. Additional EMS personnel arrived and attempted CPR.

R.   Approximately two minutes later, **KRISTIANA** was taken to a hospital. She was pronounced dead upon arrival.

13.   The tragedy of this case is that it was entirely preventable. **KRISTIANA** was a seventeen year-old girl who was mentally ill and needed help from authorities. The **DEFENDANTS** have reported that **KRISTIANA** lunged at **DEFENDANT DERR** with a knife and that she had written on her hand "I have a gun." Even assuming these facts are true, it is incomprehensible why a Police Officer, supposedly trained by the Longview Police Department, was unable to restrain a motionless 17 year-old girl. For several minutes, **KRISTIANA** was not threatening anyone. It was clear that **DEFENDANT DERR** recognized that a situation may be developing, but instead of attempting any sort of de-escalation, he immediately tased **KRISTIANA**, threw her to the floor, and ineffectually attempted to restrain her. It is readily apparent that **DEFENDANT DERR** had absolutely no training whatsoever to deal with a mentally ill citizen like

**KRISTIANA**.

14.     Texas Occupation Code section 17.01.253(j) mandates that Peace Officers shall have crisis intervention training ("CIT") within two years after joining a police department. CIT programs train officers how to deal with mentally ill citizens differently than with the general public. The basic premise of crisis intervention training is a de-escalation of a volatile situation, and is necessary because police officers encounter mentally ill individuals on virtually a daily basis. CIT training includes basic techniques which instruct the officers how to deal with someone who is suffering from a mental illness like **KRISTIANA** was. Such training explains that only one officer should speak with the mentally ill person, that officer should speak softly, and that officer should keep a distance from the mentally ill person. Officers are trained to expect verbal outbursts which frequently subside within a short period of time.

15.     It is clear that the **LONGVIEW POLICE DEPARTMENT** and its officers had no real training regarding crisis intervention techniques. **DEFENDANT DERR** had no CIT training. In fact, a review of **DEFENDANT DERR's** personnel records indicates that he never should have been a Police Officer in the first place. His review panel interviews indicate that the interviewing officers had concerns over his command presence, believed that he would need extra attention, and were not sure he would be able to handle a crisis situation. His first annual Evaluation Summary gave him a universal score of 3.0 which meets only the minimum standards. Officers are given a 3.0 if they

simply show up for work. It is the lowest and most basic number an evaluator can give a candidate, short of reprimand. No one took control of the situation. No one attempted to de-escalate the situation. No one rendered aid after the shooting.

16.     **DEFENDANT DUFFIE**, the second officer to enter the Station, was an experienced Patrol Officer and had been employed by the Longview Police Department for 19 years. He should have been well trained to deal with a mentally ill seventeen year-old girl. He was the senior officer on the scene and it is apparent that instead of using any sort de-escalation techniques or performing the basic and rudimentary step of handcuffing and securing **KRISTIANA**, he did nothing. He did not take control of the situation. He did not render aid to **KRISTIANA** after she was shot.

17.     **DEFENDANT BAGLEY** entered the scene and almost immediately drew her weapon. She performed no evaluation of what occurred but simply opened fire without having any knowledge of the situation. Again, it is clear that **DEFENDANT BAGLEY** was ill-trained regarding crisis intervention techniques. She simply decided to shoot first and ask questions later. She did not take control of the situation. She did not render aid to **KRISTIANA** after she was shot.

18.     This tragedy was 100% preventable. A little girl needed help. She went to the authorities and asked for help. Instead of help, she received several bullets in the chest.

## IV.
## PLAINTIFFS' CIVIL RIGHTS CLAIM

19.     The Civil Rights Acts provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C.A. § 1983 (West 2015).

## (A)     PLAINTIFFS' FIRST CLAIM:
## EXCESSIVE FORCE - PEACE OFFICER LIABILITY

20.     Plaintiffs restate, re-allege, re-aver, and hereby incorporate by reference any and all allegations contained in the above paragraphs as if fully set forth herein.

21.     Plaintiffs bring a claim against **DEFENDANT DERR**, **DEFENDANT BAGLEY,** and **DEFENDANT DUFFIE,** individually pursuant to 42 U.S.C. § 1983, and for punitive damages.

22.     The force used by **DEFENDANT DERR** was excessive, and therefore violates the Fourth Amendment of the United States Constitution which prohibits unreasonable searches and seizures.

23.     The force used by **DEFENDANT BAGLEY** was excessive, and therefore violates the Fourth Amendment of the United States Constitution which prohibits unreasonable searches and seizures.

24.     The force used by **DEFENDANT DUFFIE** was excessive, and therefore violates the Fourth Amendment of the United States Constitution which prohibits

unreasonable searches and seizures.

25.     At all times relevant, **DEFENDANT DERR** had actual awareness that **KRISTIANA** had constitutional protection against unreasonable search and seizure. Despite having actual awareness of these protections, **DEFENDANT DERR** violated the constitutional rights of **KRISTIANA**.

26.     At all times relevant, **DEFENDANT BAGLEY** had actual awareness that **KRISTIANA** had constitutional protection against unreasonable search and seizure. Despite having actual awareness of these protections, **DEFENDANT BAGLEY** violated the constitutional rights of **KRISTIANA**.

27.     At all times relevant, **DEFENDANT DUFFIE** had actual awareness that **KRISTIANA** had constitutional protection against unreasonable search and seizure. Despite having actual awareness of these protections, **DEFENDANT DUFFIE** violated the constitutional rights of **KRISTIANA**.

### (B)     PLAINTIFFS' SECOND CLAIM:
### INADEQUATE TRAINING/ RETENTION - CITY OF LONGVIEW LIABILITY

28.     The actions of the three **DEFENDANTS** clearly demonstrate a complete and total failure to train by **DEFENDANT CHIEF DINGLER**. As Chief Law Enforcement Officer, **DEFENDANT CHIEF DINGLER** had a duty to ensure that officers in the Longview Police Department were adequately trained in dealing with citizens with mental health issues. However, regardless of **KRISTIANA's** mental condition, the actions taken by the Longview Police Department demonstrate a complete disregard for **KRISTIANA's** Fourth Amendment Rights. **KRISTIANA** was completely

subdued for minutes at a time. If the **DEFENDANTS** truly believed she was a genuine threat they had multiple opportunities to restrain **KRISTIANA.**

29.     The **DEFENDANT CITY OF LONGVIEW** and Longview Police Department are liable under 42 U.S.C. § 1983 for failing to train their law enforcement officers and for retaining an individual clearly not suitable to be a Longview Police Officer.

30.     The Longview Police Department demonstrated deliberate indifference in retaining **DEFENDANT DERR.**

**V.**
**SUPERVISORY LIABILITY - DEFENDANT, DON DINGLER,**
**CHIEF OF THE LONGVIEW POLICE DEPARTMENT**

31.     As Chief Law Enforcement Officer and the individual in charge of policy decisions for Longview Police Department, **DEFENDANT CHIEF DINGLER** had the duty to ensure officers like **DEFENDANTS GLENN DERR**, **DEFENDANT GRACE BAGLEY**, and **DEFENDANT GENE DUFFIE** received proper crisis intervention training. CIT training gives officers a basic understanding of mental health issues, appropriate de-escalation techniques, and proper communication tactics. CIT training is completely different than typical police training. For instance, situations involving mentally ill persons require a greater degree of patience and can require use of CIT tactics for extended periods of time. Properly trained CIT officers are trained not to let the pressure of time to be a factor in their decision making.

32.     **DEFENDANT DERR** had subdued **KRISTIANA**. She was not a threat for several minutes after their initial encounter.

33.     **DEFENDANT DINGLER**, as a Chief Law Enforcement Officer, had policy making authority for the Longview Police Department. He possessed final authority to establish municipal policy with respect to hiring, training, and retention of all Longview Police Department Officers. The personnel records for **DEFENDANT DERR** clearly indicate that he was not suitable for police work. There was genuine concern in the Department as to whether he should be on the force. **DEFENDANT DINGLER** had actual notice of **DEFENDANT DERR**'s lack of fitness to serve, yet retained him anyway. This conduct rises to the level of deliberate indifference to constitutional rights of citizens, such as **KRISTIANA**.

## VI.
## TITLE II, AMERICANS WITH DISABILITIES ACT

34.     Title II of the Americans with Disabilities Act (hereinafter "ADA") provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity. A public entity includes any department, agency, special purpose district, or other instrumentality of a State, or States or Local Government. The language of Title II of the ADA tracks the language of section 504 of the Rehabilitation Act of 1973. It was Congress' intent that Title II extend the protection of the Rehabilitation Act to cover all programs of State or Local Governments regardless of the receipt of federal financial assistance in that it would work in the same manner as section 504. The statute specifically provides that

remedies, procedures, and rights available under section 504 shall be the same as those available under Title II. Section 504 provides that no otherwise qualified individual with a disability shall, solely by reason of his or her disability, be excluded from the participation and, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal or financial assistance. A program or activity includes all of the operations of a department, agency, special purpose district, or other instrumentality of a state, or of a local government. A disabled plaintiff can succeed in an action under Title II if she can show that, by reason of her disability, she was either excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or otherwise subjected to discrimination by such entity. The ADA protects those with mental illnesses and requires reasonable accommodation of individuals like **KRISTIANA** who suffer from bipolar disorder/ depression.

35.    Various courts have ruled that the encounter between a disabled individual and the police officer determines whether Title II will apply. There is consensus that when the situation is emergent and the officers have to make a split-second decision, the application of Title II of the ADA is disallowed. However once an area is secure there is not a threat to human safety, police officers are under a duty to reasonably accommodate the individual's disability in handling and transporting that person to a mental health care facility.

36.    As is clearly evident from the video of January 22, 2015, **KRISTIANA**

went to the Longview Police Department and repeatedly asked for help. The entire encounter between her and law enforcement officers took place over an eleven minute period. The video clearly demonstrates that **KRISTIANA** was not a threat to the police officers for several minutes after the initial contact with officer **DEFENDANT DERR**. The video clearly indicates that **KRISTIANA** was prone, not moving, and not a threat to the police officers. For reasons unknown, the officers did not restrain **KRISTIANA**. They were afforded every opportunity to deescalate the situation. Either through gross malfeasance or deliberate indifference to the rights of **KRISTIANA,** they allowed the situation to deteriorate, which ultimately cost this young lady her life.

## VII.
## SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION

37.     In addition to violating the rights guaranteed to **KRISTIANA** by the First and Fourteenth Amendment to the United States Constitution, **DEFENDANTS**, acting under color of law, violated the rights guaranteed to **KRISTIANA** by the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution.

## VIII.
## DAMAGES

38.     Plaintiffs seek damages in the amount of ten million dollars ($10,000,000.00) for the violation of **KRISTIANA JOY COIGNARD**'s Fourth Amendment constitutional right to be free from unreasonable search and seizure.

39.     Plaintiffs seek a declaratory judgment that the actions of **DEFENDANTS** here violated **KRISTIANA JOY COIGNARD**'s Fourteenth Amendment constitutional

rights to Due Process and Equal Protection of the law. Plaintiffs also ask this Court to adopt the standard for reviewing ADA accommodation claims applied by the Ninth Circuit in *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231-33 (9th Cir. 2014), *rev'd* 135 S.Ct. 1765 (May 18, 2015).

## IX.
## ATTORNEY'S FEES

40.     Plaintiffs are entitled to recover attorney's fees and costs as required by the Civil Rights Attorney's Fees Award Act of 1976. *See* 49 U.S.C. § 1988. Plaintiffs hereby request that the Court and jury award them attorney's fees and expenses.

## X.
## JURY DEMAND

41.     Plaintiffs respectfully demand a jury trial pursuant to Federal Rule of Civil Procedure 38(b).

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs hereby respectfully request that Defendants, **THE CITY OF LONGVIEW, DON DINGLER, Individually and as CHIEF OF THE LONGVIEW POLICE DEPARTMENT, OFFICER GLENN DERR, Individually, OFFICER GRACE BAGLEY, Individually,** and **OFFICER GENE DUFFIE, Individually,** be found liable, jointly and severally, for actual damages above the jurisdictional minimum of the Court, exemplary damages, pre-judgment interest, post-judgment interest, costs of Court, attorney fees and expenses and all other relief to which Plaintiff is justly entitled, at law or in equity.

Respectfully submitted,


*/s/ Tim Maloney*
**TIM MALONEY**
State Bar No. 12887380
**LAW OFFICES OF MALONEY & CAMPOLO**
926 S. Alamo
San Antonio, Texas 78205
(210) 922-2200 – Telephone
(210) 923-1313 – Facsimile
tmaloney@maloneyandcampolo.com
mlopez@maloneyandcampolo.com


ATTORNEYS FOR PLAINTIFFS
ERIK AND ELIZABETH COIGNARD,
Individually and As Next Friends of
KRISTIANA JOY COIGNARD (Minor)

## **CERTIFICATE OF CONFERENCE**

On August 28, 2015, I spoke to Darren K. Coleman. I was informed that, on behalf of his clients, Mr. Coleman had no opposition to the Plaintiffs' Second Amended Complaint.

*/s/ Tim Maloney*
TIM MALONEY
Counsel for Plaintiffs